This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37317**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**ERIC BIBEAU,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**　　Defendant Eric Bibeau appeals the district court's order denying his motion to suppress evidence obtained from a traffic stop on the ground that the stop was not supported by reasonable suspicion. We affirm.

## BACKGROUND

**{2}**     At approximately 11:00 p.m. on a July night, Officer Mervin Daniel was monitoring traffic from his patrol car parked at a carwash near the intersection of 20th Street and Dustin Avenue in Farmington, New Mexico, when he observed Defendant's vehicle traveling southbound on Dustin. Defendant approached the intersection, turned eastbound onto 20th Street, and "[took] off at a high rate of speed." As Defendant accelerated, Officer Daniel heard Defendant's engine "kick in." Officer Daniel did not see any other vehicles travelling eastbound on 20th Street at the time Defendant accelerated. Based on his observations, Officer Daniel pulled Defendant over for "exhibition of speed or acceleration," in violation of NMSA 1978, Section 66-8-115 (1978), which provides, in relevant part:

> [N]o person shall drive a vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration or for the purpose of making a speed record, whether or not the speed is in excess of the maximum speed prescribed by law, and no person shall in any manner participate in any such race, drag race, competition, contest, test or exhibition.

Although Officer Daniel did not cite Defendant for violating Section 66-8-115, Defendant was ultimately arrested and charged with driving while intoxicated (DWI), in violation of NMSA 1978, Section 66-8-102(A) (2016).

**{3}**     Defendant moved to suppress the evidence obtained from the traffic stop, arguing that the stop was not supported by reasonable suspicion. The magistrate court denied the motion and found Defendant guilty of DWI. On appeal to the district court, Defendant again moved to suppress the evidence obtained from the traffic stop. He argued that Officer Daniel could not have had reasonable suspicion that Defendant was engaged in an "exhibition of speed or acceleration" because such action required an intent to display speed to others. Section 66-8-115(A). Further, he contended, there was no evidence of such an intent because there were no other vehicles or persons present at the time Defendant accelerated and Officer Daniel's patrol car was not within Defendant's line of sight. Defendant also argued that the evidence should be suppressed because Section 66-8-115 was unconstitutionally vague in that the term "exhibition of speed or acceleration" encouraged subjective and ad hoc application.

**{4}**     At the suppression hearing, Officer Daniel testified that businesses on 20th Street were still open at the time he observed Defendant's acceleration. Although Officer Daniel did not know how fast Defendant was driving, he thought Defendant was "moving too fast for the circumstances" and "driving like somebody was chasing him." Officer Daniel never saw Defendant's vehicle fishtail, or Defendant's tires lose traction, or smoke. Nonetheless, he believed Defendant's "unwarranted" acceleration on a street that had businesses still open was "unsafe," stating it was "too easy to lose control when [Defendant] was gunning [his] engine like that."

**{5}** In addition to Officer Daniel's testimony, the district court reviewed the officer's dash cam video, which captured Defendant's vehicle entering the intersection and beginning to accelerate onto 20th Street. Defendant called five former law enforcement officers, four of whom testified about their understanding of the requirements of Section 66-8-115. Each of the former officers testified that based on their review of the dash camera video, they did not believe Defendant violated the statute.

**{6}** The district court denied Defendant's motion and entered findings of fact and conclusions of law largely summarizing Officer Daniel's testimony about his observations. Based on these findings, the district court concluded that Officer Daniel had reasonable suspicion to believe Defendant violated Section 66-8-115. The court expressed doubt as to whether Defendant had standing to challenge the constitutionality of Section 66-8-115 because he was not charged with violating the statute. It concluded that even if Defendant had standing, "reasonable suspicion c[ould] be constitutionally sufficient even if [D]efendant did not actually violate the statute for which [D]efendant was stopped . . . [or] where the statute for which [D]efendant is stopped might, in the future, possibly be declared unconstitutionally vague and void." Accordingly, the court did not reach Defendant's constitutionality argument. Defendant conditionally pleaded guilty to DWI, reserving the right to appeal the denial of his motion to suppress.

## DISCUSSION

**{7}** Defendant argues that Officer Daniel did not have reasonable suspicion to stop him because "Section 66-8-115 requires a specific intent to put on an exhibition of speed or acceleration for other people resulting in [the] loss of traction or control over the motor vehicle[,]" and there was no evidence that Defendant was aware of any potential onlookers at the time he accelerated, nor was there any evidence that Defendant lost traction with the road, fishtailed, or lost control of his vehicle.

**{8}** "Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to the district court's denial of the motion to suppress." *State v. Scharff*, 2012-NMCA-087, ¶ 8, 284 P.3d 447. "[W]e review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. "Our review of a district court's determination of whether reasonable suspicion existed is de novo based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861.

**{9}** "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment [of the United States Constitution,] or Article II, Section 10 [of the New Mexico Constitution] if the officer has a reasonable suspicion that the law is being or has been broken." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted). "[We] will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal

activity occurred or was occurring." *State v. Dopslaf*, 2015-NMCA-098, ¶ 8, 356 P.3d 559 (internal quotation marks and citation omitted). "This includes reasonable suspicion that a traffic law has been violated." *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 11, 404 P.3d 782. "The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *State v. Munoz*, 1998-NMCA-140, ¶ 9, 125 N.M. 765, 965 P.2d 349.

**{10}** We first address whether Defendant preserved his argument that Officer Daniel lacked reasonable suspicion because Section 66-8-115 requires *both* a specific intent to put on an exhibition of speed or acceleration to others *and* a loss of traction or control over the motor vehicle. Defendant contends he preserved the question of whether Section 66-8-115 requires a loss of traction or control over the motor vehicle because he invoked a ruling as to the meaning of Section 66-8-115, cited cases from other jurisdictions that interpreted their respective racing statutes to require a loss of traction or control, and presented witnesses who testified that they believed a loss of traction or control was necessary to find a violation of Section 66-8-115.

**{11}** Yet, as the State points out, Defendant never argued in his motion to suppress or at the suppression hearing that Section 66-8-115 requires a loss of traction or control of the vehicle. Nor did Defendant submit in his proposed findings of fact and conclusions of law a conclusion of law that Section 66-8-115 requires a loss of traction or control of the vehicle. Defendant's sole argument below was that Officer Daniel did not have reasonable suspicion to stop him because Section 66-8-115 requires a specific intent to put on an exhibition of speed or acceleration to others.

**{12}** Because he did not invoke a ruling from the district court on the question of whether there must be a loss of traction or control over the motor vehicle in order to violate Section 66-8-115, Defendant failed to preserve this claim for our review. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Vandenberg*, 2003-NMSC-030, ¶ 52, 134 N.M. 566, 81 P.3d 19 ("In analyzing preservation, we look to the arguments made by [the d]efendant below."); *State v. Jacobs*, 2000-NMSC-026, ¶ 12, 129 N.M. 448, 10 P.3d 127 ("In order to preserve an issue for appeal, it is essential that a party must make a timely objection that specifically apprises the [district] court of the claimed error and invokes an intelligent ruling thereon."). Accordingly, we only address Defendant's argument that Officer Daniel did not have reasonable suspicion to stop him because Section 66-8-115 requires a specific intent to put on an exhibition of speed or acceleration for other people, and there was no evidence that Defendant was aware of any potential onlookers.

**{13}** Although our courts have not conclusively determined whether Section 66-8-115 requires a specific intent to put on a display of speed or acceleration to others, both our Supreme Court and this Court have appeared to conclude that such a requirement exists. In *State v. Luna*, an officer observed the defendant drive away from an intersection "at a high rate of acceleration, causing the rear tires of his car to spin on the

pavement."[1] 1980-NMSC-009, ¶ 5, 93 N.M. 773, 606 P.2d 183, *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990). The officer pulled the defendant over for exhibition driving, in violation of a municipal ordinance identical to Section 66-8-115. *Id.* ¶¶ 5, 10; *see State v. Gonzales*, 2019-NMCA-036, ¶ 9, 444 P.3d 1064 (observing that the municipal ordinance involved in *Luna*, 1980-NMSC-009, was identical to Section 66-8-115). The defendant argued that the stop was invalid because "he could not be stopped for exhibition driving unless there was some type of public display." *Luna*, 1980-NMSC-009, ¶ 10. The Supreme Court rejected the defendant's argument, stating, "[The d]efendant was driving on a public street, and at least one other person, the police officer, witnessed the event. Even if some type of public display were necessary, a question we do not reach, it was present here, so the stop was reasonable and valid." *Id.*

**{14}** This Court recently addressed a similar argument in *Gonzales*, 2019-NMCA-036. In *Gonzales*, an officer stopped the defendant for violating Section 66-8-115 after witnessing the defendant—who was stopped next to another vehicle at a light—rev his engine when the light turned green, causing his tires to peel out, squeal, and produce smoke. 2019-NMCA-036, ¶ 2. The state argued at trial that the defendant's conduct "violated the portion of Section 66-8-115 criminalizing driving in an 'exhibition of speed or acceleration.' " *Gonzales*, 2019-NMCA-036, ¶ 8 (quoting § 66-8-115). After the jury convicted the defendant of violating Section 66-8-115, the defendant appealed, arguing substantial evidence did not support his conviction. *Gonzales*, 2019-NMCA-036, ¶ 7. Specifically, the defendant asserted that the term "exhibition" required a "display of driving skill to an audience[,]" of which there was insufficient evidence. *Id.* ¶¶ 7, 11 (internal quotation marks omitted).

**{15}** In addressing this issue, we noted that although the term "exhibition" was not defined in the relevant criminal statutes, our courts have defined " 'exhibition' " in other contexts as " 'showing, evincing, or showing off' " and " 'to exhibit' " as to " 'show or display outwardly especially by visible signs or actions[.]' " *Id.* (quoting *State v. Myers*, 2009-NMSC-016, ¶ 19, 146 N.M. 128, 207 P.3d 1105). Accordingly, we held that the term "exhibition" "d[id] not require a display of a particular skill, such as driving prowess." *Id.* (internal quotation marks omitted). Citing *Luna*'s assumption of a public display requirement, we further held that "any requirement that the 'exhibition of speed or acceleration' involve a public display to another [was] met." *Gonzales*, 2019-NMCA-036, ¶¶ 11, 13. Given that there was at least one other motorist present (in addition to the arresting officer) when the defendant revved his engine, and the defendant told the officer "the guy beside him had pissed him off[,]" we concluded that "there [was] substantial evidence that [the d]efendant intentionally engaged in an outward display of speed or acceleration to another." *Id.* ¶ 13. Although we found the evidence sufficient to support the defendant's conviction, we "emphasize[d] that we [did] not attempt[] to draw the boundaries of criminality of 'exhibition of speed or acceleration[.]' " *Id.* ¶ 12.

---

[1]It is unclear where the officer was when he witnessed the acceleration. *See id.* ¶¶ 5, 10. It is also unclear when the defendant was driving or whether there were any other vehicles or pedestrians present at the time. *See id.*

**{16}** Defendant acknowledges that neither of these cases conclusively held that Section 66-8-115 requires a specific intent to put on an exhibition of speed or acceleration for others. Nonetheless, he argues that this Court should interpret Section 66-8-115 to require such an intent. We need not decide this issue here, however, because even if Defendant is correct that such intent is required, there was substantial evidence of potential onlookers at the time Defendant accelerated such that there existed reasonable suspicion that he "intentionally engaged in an outward display of speed or acceleration to another."[2] *Gonzales*, 2019-NMCA-036, ¶ 13.

**{17}** Although Defendant did not lose traction with the road, fishtail, or lose control of his vehicle, Officer Daniel saw and heard Defendant "gun[ his] engine" and "take off at a high rate of speed," which he described as "too fast for the circumstances," "unwarranted," and "unsafe" on a street that had businesses still open. It is undisputed that Defendant was driving on a public street, and at least one other person, Officer Daniel, witnessed Defendant's acceleration. Moreover, and consistent with the district court's finding that "[t]raffic was light" at the time of Defendant's arrest, the dash cam video showed three cars clear the intersection at 20th Street and Dustin a few seconds before Defendant entered the intersection. Additionally, the dash cam video appears to show an open gas station across the street from Officer Daniel's position at the point Defendant accelerated, as well as several people walking in and out of a grocery store that Defendant drove past on 20th Street.

**{18}** Officer Daniel's observations of Defendant's "unwarranted" and "unsafe" acceleration on a street that had open businesses and other vehicles present were sufficient to create a reasonable suspicion that Defendant "intentionally engaged in an outward display of speed or acceleration to another." *Gonzales*, 2019-NMCA-036, ¶ 13; *see Luna*, 1980-NMSC-009, ¶ 10 (concluding that the stop was reasonable and valid because "[the d]efendant was driving on a public street, and at least one other person, the police officer, witnessed the [acceleration]"); *see also State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "[i]ntent is subjective and is almost always inferred from other facts in the case" (internal quotation marks and citation omitted)); *State v. Candelaria*, 2011-NMCA-001, ¶ 15, 149 N.M. 125, 245 P.3d 69 (noting that "[t]he concept of reasonable suspicion has always embraced a certain degree of uncertainty"). Accordingly, the district court properly denied Defendant's motion to suppress.

---

2Defendant also argues that Section 66-8-115 would be unconstitutionally vague without such a requirement, which Defendant claims would negate any reasonable suspicion to stop him under Article II, Section 10 of the New Mexico Constitution. *But see Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979) (holding that "[t]he subsequently determined invalidity of [an] ordinance on vagueness grounds d[id] not undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search . . . should not have been suppressed [under the Fourth Amendment of the United States Constitution]"). Given our conclusion that Officer Daniel had reasonable suspicion to believe Defendant violated Section 66-8-115 (as construed by Defendant to be constitutional), we need not determine whether the statute is unconstitutionally vague without a specific intent requirement, nor do we need to determine the impact of the statute's purported unconstitutionality on the existence of reasonable suspicion under Article II, Section 10 of the New Mexico Constitution. *See State v. Sanchez*, 2015-NMCA-084, ¶ 8, 355 P.3d 795 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." (internal quotation marks and citation omitted)).

**{19}** Defendant takes issue with Officer Daniel's inability to define illegal exhibition of speed or acceleration in reference to the driver's intent to put on a display for others at the suppression hearing. Defendant argues that Officer Daniel's interpretation of Section 66-8-115 amounted to a mistake of law, which Defendant contends is insufficient to support reasonable suspicion under Article II, Section 10 of the New Mexico Constitution. *See Dopslaf*, 2015-NMCA-098, ¶¶ 10-11 (holding that an officer's reasonable mistake of law could support a finding of reasonable suspicion to conduct a lawful traffic stop under the Fourth Amendment of the United States Constitution).

**{20}** However, Officer Daniel's inability to articulate the difference between legal and illegal exhibition of speed or acceleration with specificity does not change our conclusion, as "[t]he subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *Munoz*, 1998-NMCA-140, ¶ 9. Officer Daniel's observations were sufficient to give rise to a reasonable suspicion that Defendant violated Section 66-8-115, and therefore, the stop was valid. *See Dopslaf*, 2015-NMCA-098, ¶ 8 ("[We] will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when *judged objectively*, would lead *a reasonable person* to believe criminal activity occurred or was occurring." (emphases added) (internal quotation marks and citation omitted)).

## CONCLUSION

**{21}** For the foregoing reasons, we affirm.

**{22} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**