This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41626**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSE ANTONIO MONTES a/k/a
JOSE MONTES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Stan Whitaker, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}**     This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court

assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

{2}	Defendant appeals the district court's judgment and sentence, convicting him of armed robbery with a firearm enhancement. Defendant raises two issues on appeal. First, Defendant contends that in the course of the evidentiary hearing on Defendant's motion for a new trial, the district court erred in limiting defense counsel's questioning of a juror. [BIC 8-15] Second, Defendant contends the district court erred by denying his motion for a mistrial due to the officer's inadmissible testimony elicited by the State. [BIC 16-19]

{3}	Defendant's first issue challenges the way in which the district court conducted the evidentiary hearing, which was held on Defendant's allegation that after the trial proceedings had concluded Juror No. 1 told defense counsel that the jury relied on extraneous evidence in reaching its verdict. Defendant asserts that the district court improperly prevented defense counsel from impeaching Juror No. 1 at the evidentiary hearing when the juror gave testimony that was inconsistent with his previous, post-trial comments to defense counsel. Defendant suggests that the district court narrowly applied Rule 11-606(B) NMRA, and the relevant case law or that an exception in the law should be made to allow examination of a juror who voluntarily admitted that extraneous information affected the jury's decision. [BIC 13-14] As we explain below, we are not persuaded that the district court prevented Defendant from questioning Juror No. 1 about the inconsistency between the juror's previous, post-trial comment and his testimony at the evidentiary hearing, and we are not persuaded that Defendant preserved an objection to the perceived limitation on his questioning of Juror No. 1. Thus, we are not persuaded that the record supports the arguments raised. *See State v. Franklin*, 2018-NMSC-015, ¶¶ 8-9, 413 P.3d 861 (holding that a defendant must develop a claim to the extent necessary to invoke a ruling by the district court in order to preserve that claim for appeal).

{4}	Defendant alleges that Juror No. 1 approached defense counsel and his co-counsel after the trial had concluded and told them: "We had our doubts, but then someone took out their phone and looked up the exact weather from that day and it was only 30 degrees[,] so it made no sense how . . . [D]efendant was dressed." [BIC 11] The State's trial theory was that, in order to avoid being identified, Defendant changed into shorts and left his shoes and dark clothes on the ground at a nearby apartment building after robbing Victim at gunpoint. [BIC 4] From Juror No. 1's post-trial admission to defense counsel, the defense inferred that the jury's consideration, during deliberations, of the weather on the day of the alleged robbery, a fact not presented at trial, had the effect of assuaging the jury's doubts about the proof of Defendant's identity as the robber. [BIC 11] Pursuant to Defendant's request and motion for a new trial [RP 87-89], the district court held an evidentiary hearing to address the alleged juror misconduct and determine the effect, if any, the extraneous information had on the jury's verdict.

{5}	At the evidentiary hearing, before defense counsel began questioning Juror No. 1, the district court provided guidance on the permissible scope of the hearing under

Rule 11-606(B) and the relevant case law. [8-3-23 CD 10:42:45-10:45:12] The district court warned defense counsel that jury deliberations are sacrosanct and that defense counsel should be careful to avoid eliciting details about the jury's discussions. [Id.] The district court explained that questions should be carefully framed to elicit general information about whether the jury received the extraneous material and whether or not it had a material impact on the verdict without allowing details about the deliberations to be revealed. [Id.] We observe that the district court's instructions are consistent with Rule 11-606(B)(2)(a), which provides that extraneous prejudicial information improperly brought the jury's attention is an exception to the prohibition against any juror testimony "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." [BIC 10] The district court's instructions are also consistent with New Mexico Supreme Court case law providing the proper scope of an evidentiary hearing under Rule 11-606(B). *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2010-NMSC-040, ¶ 21, 148 N.M. 561, 240 P.3d 648 (explaining that the evidentiary hearing should provide the movant an opportunity to prove there is a reasonable probability that the extraneous material affected the verdict through an objective inquiry into whether "(1) material extraneous to the trial actually reached the jury, (2) the extraneous material relates to the case being tried, and (3) it is reasonably probable that the extraneous material affected the jury's verdict or a typical juror"). Nothing in the district court's instructions showed an intention to prevent the defense from asking specific questions directed at the juror's post-trial statement to defense counsel that the extraneous weather information provided by another juror had affected the jury's decision.

{6}     At the evidentiary hearing, defense counsel questioned Juror No. 1 about his post-trial statement in the following exchange:

Defense Counsel: Do you recall talking to me and some other attorneys?

Juror No.1: Yes.

Defense Counsel: Do you recall what you said to myself and my cocounsel, Ms. Silver?

District Court: Well, let's be a little more careful, and direct the testimony so that . . . (interrupted by defense counsel)

Defense Counsel: Yeah, I'm just asking if he remembers and then I'm going to narrow it down. Do you remember speaking to us at least?

Juror No. 1: I do remember speaking to you.

Defense Counsel: It was in that conversation that you, uh, did you disclose receiving information during deliberations? That were not given to you by the attorneys?

District Court: Let's be more specific about the weather.

**{7}** We are not persuaded that the district court's interjections sought to prevent defense counsel from questioning the juror on his post-trial statement to defense counsel that the extraneous weather information impacted deliberations. Before it was interrupted by defense counsel, the district court's comments suggest that the district court was attempting to narrow the questioning toward the juror's admission about the extraneous weather information to avoid eliciting details about other matters in deliberations, not to avoid questioning the juror about his post-trial statement to defense counsel.

**{8}** However, instead of focusing the questioning on the juror's post-trial statement, defense counsel's line of questioning that followed the district court's interjections related only to the jury's deliberation itself. In response to questions about jury's deliberation, the juror testified that after the jury reached its verdict and signed the paperwork, another juror took out her phone for less than one minute and described the weather on the day of the incident. [Id. 10:53:56-10:55:56] Defense counsel did not seek an explanation from the juror about the inconsistency between his post-trial admission to defense counsel and the testimony he was giving at the evidentiary hearing. Defense counsel also did not mention a desire to impeach the juror on the inconsistency of his statements and did not ask the district court if impeachment would be proper. Instead, defense counsel checked in with the district court about whether it would permit the juror to answer if the verdict changed after the other juror gave extraneous weather information from her phone. [Id. 10:57:38-10:57:50] The district court allowed the question and a yes or no answer; Juror No. 1 answered in the negative, and defense counsel asked no further questions. [Id. 10:57:50-10:58:11]

**{9}** To the extent Defendant relies on defense counsel's closing argument at the evidentiary hearing to show that Defendant preserved the issue that he was wrongfully denied the ability to impeach the juror [BIC 12; RB 3-5], we are not persuaded. Defense counsel's statements in closing only vaguely suggested that he understood he was not permitted to impeach the juror. And, his closing statements did not pose any direct question for the district court, lodge any specific objection, or invoke any ruling from the district court. This is insufficient to develop a record for, and preserve, the issue raised on appeal. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("[I]t is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)).

**{10}** Additionally, the district court's comments in response to closing argument suggested that even assuming the juror *had* told defense counsel that the extraneous weather information affected the verdict in a casual conversation after the trial, the district court would consider the juror's statements made under oath as more accurately reflecting events during the proceedings. [Id. 11:00:45-11:01:29] Accepting the juror's testimony over any prior inconsistent statements the juror may have made, the district court ruled that the extraneous weather information came in after the verdict was

reached and signed and did not impact its decision. [Id. 11:03:45-11:04:23] Thus, the district court ruled that Defendant did not meet his burden of showing prejudice and denied the motion for a new trial. [Id.; RP 124] We are therefore not persuaded that Defendant has preserved or demonstrated his claim of error. *See Franklin*, 2018-NMSC-015, ¶¶ 8-9; *see also Kilgore*, 2010-NMSC-040, ¶ 21.

**{11}** Lastly, Defendant contends that the district court erred by denying his motion for a mistrial after the officer testified that the vehicle Defendant was seen driving was stolen. [BIC 15-19] Defendant acknowledges that a curative instruction was given to the jury and that generally a curative instruction will cure any resulting prejudice. [BIC 20] *See State v. Hernandez*, 2017-NMCA-020, ¶ 17, 388 P.3d 1016 ("Our case law acknowledges that generally, a prompt admonition to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." (omission, internal quotation marks, and citation omitted)). However, Defendant contends that this general rule does not apply here because the officer's testimony was intentionally elicited and "uniquely prejudicial." [Id.] *Id.* ¶¶ 16-17 (describing the purported confession as "uniquely prejudicial" and observing that the general rule that a curative instruction will cure what otherwise would be error will not apply where the inadmissible testimony is intentionally elicited). Defendant relies on *Hernandez* as analogous authority. [BIC 16-19]

**{12}** In the current case, before trial the district court granted Defendant's motion in limine to exclude evidence of the stolen status of the vehicle involved the case, which the State did not oppose. [RP 61-63; BIC 1-2; AB 16] On direct examination during trial, while questioning an officer about the process of the police finding Defendant and the vehicle involved and identifying Defendant as the person who committed the robbery and fled to a nearby apartment complex in a black sedan, the State asked the officer what the purpose was of towing a vehicle that is involved in a crime. [3-2-23 CD 11:28:10-11:36:18; BIC 1-4; AB 16-17] The officer responded, "So, in this case, well, first of all, the vehicle was, if I'm not mistaken, I think returned as stolen." [3-2-23 CD 11:36:18-11:36:25; AB 16-17; BIC 4] Defense counsel immediately asked to approach the bench and moved for a mistrial. [3-2-23 CD 11:36:25-11:36:57; BIC 4] The prosecutor explained that she had warned the officer not to speak about prior incidents and did not anticipate that the officer would say the vehicle was stolen. [3-2-23 CD 11:36:57-11:37:09; RP 116, 126] The district court denied the mistrial and gave a curative instruction, directing the jury to disregard the question and answer, focus only on the armed robbery charge, do not allow the comment to come into deliberation in any manner. [3-2-23 CD 11:37:46-11:38:02; BIC 5] After trial, the district court entered an order that explained that the prosecutor's question did not relate to whether the vehicle was stolen and found that it was not designed to elicit information about prior bad acts and that the State did not act intentionally. [RP 126] The district court concluded that the curative instruction cured any potential prejudice. [Id.]

**{13}** The district court went on to rule that even if the officer's testimony was intentionally elicited, there was no reasonable probability that the improperly admitted evidence affected the jury's verdict. [Id.] *See State v. Tollardo*, 2012-NMSC-008, ¶ 36,

275 P.3d 110 ("[A] non[]constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." (internal quotation marks and citation omitted)). The district court reasoned that because the defense at trial was mistaken identity and Defendant denied he was the person who robbed the victim and drove the vehicle, the information about the stolen nature of the vehicle was not so material a point to sway the jury and require a mistrial. [RP 126; 8-3-23 CD 10:48:14-10:50:09]

**{14}**　We review a district court's denial of a motion for a mistrial for abuse of discretion. *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516. "The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner . . . or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Hernandez*, 2017-NMCA-020, ¶ 14 (internal quotation marks and citations omitted).

**{15}**　Similar to the question in *Hernandez,* the prosecutor's question in the present case was neutral and open-ended and led an officer to give testimony that was excluded prior to trial. *See id.* ¶ 19 (explaining that the prosecutor's question about the next step in the investigation walked the officer into giving excluded and inaccurate testimony that the defendant confessed). However, also similar to *Hernandez*, the district court in the present case found that the officer's testimony was unintentionally elicited and gave a curative instruction, and the record does not show the response the prosecutor expected. *See id.* (explaining that the district court ruled that officer's testimony was unintentionally elicited and the record did not show otherwise or reveal what testimony the prosecutor intended to elicit). Under the circumstances, like this Court did in *Hernandez*, we presume the district court in the present case correctly found that the State acted unintentionally where the record on appeal does not show otherwise. *See id.*

**{16}**　Unlike *Hernandez*, however, we hold that the district court's curative instruction in the present case was accurate, immediate, and sufficient to cure any prejudice. In *Hernandez*, the district court sua sponte excused the jury after the officer gave highly prejudicial testimony, then after about nine minutes, gave a curative instruction to the jury that inaccurately stated that the officer's answer was nonresponsive, inaccurately stated that it sustained an objection from the defendant, and only explained to the jury to disregard the officer's statement about a confession because it was nonresponsive, rather than instructing the jury to disregard the comment about the confession because no confession was actually given. *Id.* ¶¶ 24-25. In contrast, in the current case, the district court quickly gave the jury a curative instruction that accurately told the jury to completely disregard the officer's answer in deliberations because it did not relate to the current charge of armed robbery, which was the only charge before it. [BIC 5]

**{17}**　Additionally, we are not persuaded that the officer's comment in the present case about the vehicle coming up as stolen, where the issue at trial was Defendant's identity as the robber, is akin to the officer's testimony in *Hernandez* that inaccurately stated the defendant had confessed to being the driver, not the passenger, in a vehicular homicide

case involving a deadly collision with no living eye witnesses. *Id.* ¶¶ 3-6, 20-22. Further, in the present case, the victim positively identified Defendant as the armed robber, another witness corroborated the victim's account, and there was additional circumstantial evidence tying Defendant to the crime. [AB 19] We agree with the district court that the evidence against Defendant was strong. [RP 126-27] Under the circumstances, we also agree with the district court that there is no reasonable probability that the officer's isolated comment, inadvertently elicited, on a peripheral matter swayed the jury's verdict, and that any prejudice that resulted was cured by the district court's instruction to the jury. [RP 125-27] *See State v. Gonzales*, 1986-NMCA-050, ¶¶ 27-28, 105 N.M. 238, 731 P.2d 381 (stating that in determining whether to grant a new trial, the trial court is in the best position to evaluate prejudice and whether its instructions had a curative effect), *overruled on other grounds by Tollardo*, 2012-NMSC-008. Accordingly, we hold that Defendant has not established an abuse of discretion in denying his motion for a new trial.

{18}   Based on the foregoing, we affirm the district court's judgment and sentence.

{19}   **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**